IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL PAUL EAGAR,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS DRAKE, JAMES EARDLEY, ALAN GARDNER, and JAMES CRISP,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [15] DEFENDANT JAMES CRISP'S MOTION TO DISMISS**<br><br>Case No. 4:19-cv-00061-DN-PK<br><br>District Judge David Nuffer<br><br>Magistrate Judge Paul Kohler |

Defendant, James Crisp, a retired former manager of the St. George Field Office of the Bureau of Land Management (BLM) of the United States Department of the Interior, by and through his counsel, properly removed this present case from state court to this United States District Court on August 15, 2019, pursuant to 28 United States Code section 1442(a)(1).[1] Defendant Crisp then filed his motion to dismiss all claims against him in this action on September 13, 2019 (the "Motion").[2]

The parties provided complete briefing on the Motion. Although Defendant Crisp did not specify which rule of federal procedure is the basis for the Motion, Defendant's arguments focus on Plaintiff's inability to state a claim for which relief could be granted. Therefore, the following memorandum decision and order is decided under Fed. R. Civ. P. 12(b)(6). Furthermore, under the discretionary authority outlined in DUCivR 7-1(f), it is determined that that oral argument is

---

[1] Notice of Removal, docket no. 2, filed August 15, 2019.

[2] Defendant James Crisp's Motion to Dismiss, docket no. 15, filed September 13, 2019.

not necessary, and the Motion can be decided on the basis of the written filings. As set forth below is Motion is GRANTED.

Contents
BACKGROUND ..................................................................................................................... 2
STANDARD OF REVIEW ................................................................................................... 3
DISCUSSION ........................................................................................................................ 3
    I. Issue Preclusion Applies and Bars the Takings Claim Against Defendant Crisp ........... 3
    II.  Any Takings Claim is Barred by the Statute of Limitations at 28 U.S.C. § 2501. ....... 5
    III. No Bivens Claim Can Exist Against Defendant Crisp. ................................................ 8
        A. Mr. Eagar Cannot bring a Takings Claim Under *Bivens*. .................................. 8
        B. Any Bivens Claim is Barred by the Four-Year Limitations Period. ................... 9
        C. Defendant Crisp is Entitled to Qualified Immunity. ........................................ 10
ORDER ................................................................................................................................ 15

## BACKGROUND

Plaintiff Michael Paul Eagar's ("Plaintiff") complaint [3] in this action is very similar to the complaint filed in case no. 4:18-cv-00012-DN (the "Prior Action").[4] The focus of both *pro se* complaints is the claim that Defendants violated Plaintiff's rights under the Fifth Amendment of the United States Constitution by allegedly taking Plaintiff's unpatented mining claims without providing any compensation to Plaintiff.

Plaintiff's chief concern in these complaints is that these unpatented mining claims are located in Washington County within the area of the larger Red Cliffs Desert Reserve and the later-created National Conservation Area within that larger Reserve. The purpose of both these areas is to protect and preserve the Mojave Desert tortoise. The claims in the prior action against

---

[3] Notice of Removal, exhibit 1, State Court Complaint ("Present Complaint"), docket no. 2-1, filed August 15, 2019.

[4] Complaint, ECF No. 1 in 4:18-cv-00012-DN, filed April 9, 2018.

the federal defendants in that prior action were dismissed without prejudice for lack of jurisdiction in an order filed on March 7, 2019.[5]

## STANDARD OF REVIEW

Dismissal is appropriate under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[6] Each cause of action must be supported by enough sufficient, well-pleaded facts to be plausible on its face.[7] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[8] However, "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation" of the law are disregarded.[9]

## DISCUSSION

I. Issue Preclusion Applies **and** Bar**s** the Takings Claim Against Defendant Crisp

The doctrine of issue preclusion, a branch of the doctrine of res judicata, bars a plaintiff from pursuing a claim in a second or later court case that was decided in an earlier case when the four elements of this doctrine are met, as they are here. Those elements are: (1) the parties are the same in both cases or were in privity with each other; (2) the party who lost in the first case had "a full and fair opportunity to litigate the issue" lost in the first case; (3) the issue in both cases is the same; and (4) the issue was finally resolved on the merits in the first case unless it was a

---

[5] Memorandum Decision and Order Dismissing Claims Against James Crisp, Brian Trittle, Jimmee Tyre, and the United States Department of the Interior for Lack of Subject Matter Jurisdiction, and Adopting in Part and Modifying in Part [34] Report and Recommendation ("Prior Action Memorandum Decision and Order Regarding the Report and Recommendation"), ECF No. 40 in 4:18-cv-00012-DN, filed March 7, 2019.

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

jurisdictional issue, in which case any issue finally determined in ruling on the jurisdiction question in the first case cannot again be raised later.[10] Each element here is satisfied and Plaintiff's takings claim is barred.

First, the parties in both this action and the Prior Action are the same. A comparison of the caption of the complaint in this case to the complaint in the Plaintiff's Prior Action shows that the parties in this action were all included as parties in that Prior Action.

Second, Mr. Eagar, as Plaintiff in both cases, had a full and fair opportunity in that Prior Action to argue the issue of jurisdiction over his takings claim. He was there made aware that only the Federal Court of Claims has jurisdiction over any takings claim asserted under the Fifth Amendment to the United States Constitution seeking more than $10,000 against any federal defendant pursuant to 28 U.S.C. §§ 1346(a)(2), and 1491(a)(1). This issue was raised first in the prior action by the objection filed by the United States;[11] second by the report and recommendation of Magistrate Judge Pead,[12]; and last by the memorandum decision and order that adopted that report and recommendation.[13] Mr. Eagar exercised his full opportunity to respond the first two times that issue was raised.[14] The second element of issue preclusion is satisfied.

---

[10] *Park Lake Resources L.L.C. v. United States Dep't of Agric.*, 378 F.3d 1132, 1136-37 (10th Cir. 2004).

[11] Special Appearance Opposition for Motion for Summary Judgment at 3, ECF No. Docket no. 25 in 4:18-cv-00012-DN, filed July 30, 2018.at page 3 in that prior action.

[12] Report and Recommendation at 4 ("Prior Action Report and Recommendation"), Docket no.ECF No. 34 in 4:18-cv-00012-DN, filed January 8, 2019.at page 4 in that prior action.

[13] Prior Action Memorandum Decision and Order Regarding the Report and Recommendation at 4.

[14] Objections, ECF No. 28 in 4:18-cv-00012-DN, filed August 18, 2018; Memorandum of Mining Law, ECF No. 35 in 4:18-cv-00012-DN, filed January 10, 2019.

The third element of issue preclusion is met because the issue in both cares is the same: Mr. Eagar still seeks $4 million from Defendant Crisp in this new case.[15]

Finally, the issue of jurisdiction of the takings claim was fully and finally resolved in the prior action. Mr. Eager did not appeal the final decision in that case. This satisfies the last required element. All four elements needed to satisfy applying the doctrine of issue preclusion are here met and the takings claim against Defendant Crisp is barred.

II.  **A**ny Takings Claim is Barred by the Statute of Limitations **at** 28 U.S.C. § 2501.

The takings claim against Defendant Crisp is also barred by the operation of the applicable statute of limitations. Section 2501 of Title 28 of the United States Code reads in relevant part: "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." In John R. Sand & Gravel Co. v. United States,[16] the Supreme Court held that this bar is truly jurisdictional, and is not subject to being waived, even by the United States, or extended. That was a case first filed in 2002 in the Court of Federal Claims by the holder of a 50-year lease to mine gravel. The claimant sought damages under the Fifth Amendment for a physical taking by the United States after the EPA took various actions to occupy and fence off parts of the leased property to ameliorate pollution issues caused by an earlier operation on the site.

Notwithstanding that the United States affirmatively waived on appeal its defenses under the limitations statute cited above, after it won on the merits at trial, the Federal Circuit Court of Appeals held on appeal that the trial court had erred both in allowing the case to be heard on its merits and in ruling that the statute of limitations had not accrued more than six years before the

---

[15] Present Complaint at 18.

[16] 552 U.S. 130 (2008).

lawsuit was filed.[17] The appeals court vacated the rulings of the trial court and remanded with instructions to dismiss the complaint for lack of jurisdiction. The Supreme Court then fully upheld the appeals court decision. A similar result applies here.

Mr. Eagar claims that the Defendants have taken his property without just compensation, as he claims compensation to him is required under the Fifth Amendment to the United States Constitution.[18] He requests $4,000,000.00 in compensation.[19] However, even if Mr. Eagar had filed his claims in the only court that might have once had jurisdiction, the Court of Federal Claims, his takings claim cannot be considered now as it was filed far too late.

Mr. Eagar's takings claims are futile because they first accrued well more than six years before this case was filed. Mr. Eagar first claims that Defendants violated the Takings Clause by including his mining claims within the Red Cliffs Desert Reserve.[20] That reserve was created in 1996, as the Court found in Mr. Eagar's earlier case.[21] Mr. Eagar also again claims that a further takings occurred when his mining claims were again included within the Red Cliffs National Conservation Area (NCA), the boundaries of which Congress established on March 30, 2009, created within the Desert Reserve.[22] Mr. Eagar filed this lawsuit on June 28, 2019.[23] Thus, Mr. Eagar's lawsuit is at a minimum, more than four years too late, even for the later event of the NCA creation, and even if his complaint had been filed in the proper court.

---

[17] *John R. Sand & Gravel Co. v. United State,* 457 F.3d 1345 (Fed. Cir. 2006).

[18] Present Complaint at 3.

[19] *Id.* at 18.

[20] *Id.* at 3

[21] Prior Action Memorandum Decision and Order Regarding the Report and Recommendation at 5-6.

[22] 16 U.S.C. § 460(b)(3)(A).

[23] Present Complaint at 1.

Anticipating this issue, Mr. Eagar claims that his delay in filing suit is excused by one or more of three grounds: (1) the discovery rule; (2) a cite to a state criminal tolling statute, Utah Code section 76-1-303(3); and (3) a claim that the limitations statute may be enlarged retroactively.[24] Magistrate Judge Pead thoroughly addressed and rejected the application of the discovery rule in his Report and Recommendation in the Prior Case.[25] That reasoning was adopted and approved,[26] and Eagar's argument is rejected here on the same basis.

Mr. Eagar's citation to a state criminal statute fares no better than his first argument. A quick review of the criminal statute cited by Mr. Eagar in the present Complaint shows that its tolling period is limited to just two years after the end of the public official's employment, which was 2010 given that Defendant Crisp retired in early March of 2008.[27] Moreover, that criminal statute *does not* apply to this civil proceeding, as Mr. Eagar does not have standing to exercise the authority of a criminal prosecutor.

Further, Mr. Eagar's contention that a limitations statute may be enlarged retroactively only applies, if at all, to enlargement by legislative action, which is not the case here. Even then, it could only apply at best if the new statute were passed during the original time remaining to file the lawsuit. A statute of limitations defense vests once the statutory period expires, and any subsequent attempt, express or implied, to retroactively alter that vested right by reviving expired claims is prohibited.[28]

---

[24] *Id.* at 4.

[25] Prior Action Report and Recommendation at 10.

[26] Prior Action Memorandum Decision and Order Regarding the Report and Recommendation at 5-6.

[27] Utah Code § 76-1-303(3)(a)(ii).

[28] *See State v. Apotex Corp.*, 2012 UT 36, ¶ 67, 282 P.3d 66 (quoting *Roark v. Crabtree,* 893 P.2d 1058, 1063 (Utah 1995)).

Accordingly, the expiration of the six-year federal limitations statute in 28 U.S.C. § 2501 also would require dismissal of Mr. Eagar's takings claim against Defendant Crisp or any other federal official or agency.

### III. No Bivens Claim Can Exist Against Defendant Crisp.

While it seems a stretch too far to construe the allegations of Mr. Eagar's Complaint as alleging any claim against Defendant Crisp as arising under Bivens v. Six Unknown Fed. Narcotics Agents,[29] any such claim would be barred for all of the following reasons: (A) any such claim is not cognizable under Bivens, (B) the four-year statute of limitation of Utah Code section 78B-2-307(3) applicable to such a claim expired long before this action was filed, and (C) Defendant Crisp would be entitled to qualified immunity for any such claim.

**A. Mr. Eagar Cannot bring a Takings Claim Under *Bivens*.**

The Supreme Court has made it clear that recognizing new remedies under the *Bivens* rationale is disfavored. No new types of claims may be asserted under *Bivens* for an alleged constitutional violation by a federal official acting in an individual capacity (as opposed to an official capacity) where the context is new and an existing remedial process counsels hesitation against recognizing a new remedy.[30] Here, if Mr. Eagar's rights had truly been compromised by an uncompensated and compensable takings by a government entity, he could have had a remedy by timely suing the government entity or entities responsible for such takings for the value of the property so taken.

---

[29] 403 U.S. 388 (1971).

[30] *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1857-58 (2017).

In fact, Congress created an entire court—the Court of Federal Claims—to address takings claims.[31] This avenue of relief alone eliminates a *Bivens* claim here.[32] Indeed, to make liable for such a claim an individual federal officer who simply acted in lawful ways to enforce a government policy he did not create is not only a step too far, but presents a new context where the judiciary should not recognize a cause of action.[33] Thus, the circumstances of Mr. Eagar's Complaint do not rise to any cognizable *Bivens* claim.

**B. Any Bivens Claim is Barred by the Four-Year Limitations Period.**

But even if Mr. Eagar had alleged such a cognizable claim, it would be barred by the four-year statute of limitations found in Utah Code section 78B-2-307(3). *Bivens* actions are governed by the statute of limitations that applies generally to personal injury actions in the state where the claim arose.[34] Because Mr. Eagar's action arose in Utah, the four-year statute of limitations for personal injury in Utah Code § 78B-2-307(3) applies to bar any *Bivens* cause of action.[35]

The issue of when a federal cause of action accrues is controlled by federal law.[36] "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."[37] A plaintiff has "reason to know" of his injury when he should have discovered the existence and cause of his injury

---

[31] 28 U.S.C. § 1346(a).

[32] *Bush v. Lucas,* 462 U.S. 367, 388-89 (1983).

[33] *Wilkie v. Robbins*, 551 U.S. 537, 547-48, 562 (2007).

[34] *Indus. Constructors Corp. v. U. S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994).

[35] *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004).

[36] *Indus. Constructors Corp.*, 15 F.3d at 968-69.

[37] Id. at 969 (citing *United States v. Kubrick,* 444 U.S. 111, 121 (1979)).

through the exercise of reasonable diligence.[38] "A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run."[39] Mr. Eagar's claims clearly accrued long before the four years immediately preceding the filing of this action in 2019, and any *Bivens* claim is barred for that reason also.

**C. Defendant Crisp is Entitled to Qualified Immunity.**

Government officials are immune from suit unless their conduct violates clearly established statutory or constitutional rights about which a reasonable person would have known.[40] This qualified immunity is "'an immunity from suit rather than a mere defense to liability.'"[41] "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violated the law.'"[42] Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted."[43] Indeed, qualified immunity may protect an official's conduct even if the plaintiff's rights were actually violated.[44] Thus, qualified immunity gives government officials the benefit of the doubt unless the law at the time of their conduct clearly prohibited their action.[45]

Unlike the defenses available to nongovernmental actors, qualified immunity protects government officials not only against liability, but also from litigation, including discovery and

---

[38] Id. (citing *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 692 (10th Cir. 1981)).

[39] *Id.*

[40] *Harlow v. Fitzgerald,* 457 U.S. 800, 815-16 (1982).

[41] *Pearson v. Callahan,* 555 U.S. 223, 237 (2009) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

[42] *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018).

[43] *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004).

[44] *Wilson v. Layne,* 526 U.S. 603, 614, 618 (1999).

[45] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

trial.[46] This is because litigation against public officials imposes substantial social costs, including "the expense of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office."[47] Because litigation exacts these costs whether or not liability is ultimately found, the Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."[48]

Determining whether a federal official is entitled to qualified immunity involves a two-prong analysis.[49] First, a court must determine whether, takings the facts in the light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right.[50] Second, if the officer violated the plaintiff's constitutional right, the court must determine whether the right was clearly established at the time the alleged violation occurred.[51] The court may decide which of these two prongs to address first, and need not address both.[52] The plaintiff bears the "heavy burden" of proof on both prongs.[53]

To be "clearly established," case law from either the Supreme Court or the Tenth Circuit must place the constitutional question "beyond debate" at the time of the alleged violation.[54] In

---

[46] *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

[47] *Harlow*, 457 U.S. at 814.

[48] *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) .

[49] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[50] *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009).

[51] *Id.*

[52] *Id.* at 1312 n.2 (citing *Pearson*, 555 U.S. at 236).

[53] *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007).

[54] *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018) (internal citations omitted); *Kisela*, 138 S. Ct. at 1152 (internal quotations omitted).

other words, "the legal principle must clearly prohibit the officer's conduct in the particular circumstances before him."[55]

In assessing whether Mr. Eagar can overcome a claim of qualified immunity, this Court must examine the Complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[56] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[57] The court must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."[58] That said, a court is not required to accept as true conclusory statements or legal conclusions couched as factual allegations.[59] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[60] A court must "draw on its judicial experience and common sense" to determine "whether a complaint states a plausible claim for relief."[61]

Here, the plausibility requirement of Rule 8 has not been met. Mr. Eagar's short and conclusory Complaint simply contains no factual allegations detailed enough to meet this plausibility requirement. For example, the Complaint claims only that Defendants were in office when the Red Cliffs Desert Reserve was created [in early 1996].[62] The Complaint does not allege

---

[55] *Wesby*, 138 S. Ct. at 590.

[56] *Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

[57] *Id.*

[58] *Albers v. Board of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014).

[59] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).

[60] *Id.* at 678.

[61] *Id*. at 679.

[62] Present Complaint at 3.

how or when, if at all, Defendant Crisp may have been involved in determining the boundaries of that Reserve or the National Conservation Area (NCA). According to Defendant Crisp, he had no involvement in and provided no input to those decisions.[63] Plaintiff challenged the assertion that Defendant Crisp was not involved in the creation of the Reserve with the filing of a document signed by Defendant Crisp in the year 2000, withdrawing from new mineral entry lands in the Reserve,[64] but Crisp's reply showed how that 2000 document was not an effective rebuttal of Plaintiff's claim, because it was signed over three years after the Reserve had been created and did not have the effect of invalidating already existing mining claims like those of Plaintiff.[65] Consequently, Mr. Eagar has not shown that Defendant Crisp violated any Constitutional right, and any *Bivens* claim against Defendant Crisp also fails for this further reason.

Moreover, the Complaint does not say how the inclusion of Mr. Eagar's unpatented mining claims within the boundaries of the Reserve acted to create any taking of compensable value from those mining claims. Instead, Mr. Eager make the conclusory assertion that the inclusion resulted in a "tremendous loss of opportunity" to have a mining operation and to derive economic benefit from the mining claims, without ever specifying how that could be.[66] This does not meet the required plausibility standard to state a constitutional taking and fails to meet the first prong of the test to defeat qualified immunity.

Yet paradoxically, the Complaint also alleges that Defendants are not sued in their official capacities, but only in their individual capacities.[67] It is simply not plausible that any

---

[63] Motion at 14.

[64] Memorandum in Opposition, Exhibit 1, Decision Record, docket no. 18-1, filed October 8, 2019.

[65] Defendant James Crisp's Reply Supporting his Motion to Dismiss at 3, docket no. 19, filed October 16, 2019.

[66] Present Complaint at p. 3.

[67] *Id.*

Defendant could have taken any action, only in their individual capacities, to include Mr. Eagar's mining claims in any governmentally-administered area.

The Complaint also suggests, without stating how or when, that perhaps Defendant Crisp had something to do with Mr. Eagar's mining claims being included in the later-created National Conservation Area (NCA) that lies within the Desert Reserve and that this also hurt Mr. Eagar's mining claims in some manner not specified.[68] But that claim is also not plausible when one realizes that the NCA was not created until March 30, 2009, over one year after Defendant Crisp apparently retired from the BLM (in early March of 2008).[69] Further, section 1974(g)(1) of that Act made all withdrawals in the NCA expressly "subject to valid existing rights," thus making any claim of harm further implausible.[70]

And the Complaint does not specify how the creation of either the Reserve or the NCA result in a taking of any compensable value from Mr. Eagar's mining claims, which apparently are still considered by the BLM to be at least nominally "active" unpatented claims by virtue of his having submitted documentation of annual assessment work. Therefore for all of the reasons stated above, any *Bivens* claim against Defendant Crisp must be dismissed.

And as a final observation, Mr. Eagar's failure to properly plead his claims cannot be excused because of his pro se status. The Supreme Court has noted that notwithstanding the risk that pro se parties may sometimes make fatal procedural errors, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel," as procedural rules are "based on the assumption that

---

[68] *Id.*

[69] Pub. L. No. 111-11, § 1974, 123 STAT. 991, 1081-83 (2009), codified at 16 U.S.C. § 460.

[70] 16 U.S.C. § 460(g)(1).

litigation is normally conducted by lawyers" who are fully able to understand and comply with pleading requirements.[71]

ORDER

IT IS HEREBY ORDERED that the Motion[72] is GRANTED. The takings claim against Defendant Crisp is dismissed with prejudice.

The clerk is directed to close this case.

Signed April 10, 2020

BY THE COURT:

David Nuffer
United States District Judge

---

[71] *McNeil v. United States*, 508 U.S. 106, 113 (1993).

[72] Defendant James Crisp's Motion to Dismiss, docket no. 15, filed September 13, 2019.